SOMMERVILLE, J.
Plaintiff was a young colored laborer, engaged by defendant, who was operating a steam digger at the intersection of Melpomene Canal with Broad street. He alleges his duties to have been to *103 attend to-and handle four wooden rollers, upon which the framework of the steam digger was placed, in order to move it, as the work of digging progressed; that, while in the act of placing a roller in front of the digger, the framework on which the digger was being moved became uneven, through the fault of the defendant, and his (plaintiff’s) right hand, excluding the thumb, was crushed and injured under said roller, and, later, that the thumb was also crushed; that the attention of the engineer of defendant was called to the condition of the framework, but he neglected to even it up; that plaintiff signaled to the engineer that the rollers were not in proper position, and after his hand had been crushed, and the engine stopped, the engineer wantonly operated the machinery, so as to crush his thumb. He alleges that all of these acts were done carelessly and negligently by defendant, and that through his fault he (plaintiff) was injured. He asks for judgment in the sum of $2,500 in damages.
There was judgment in favor of defendant, and plaintiff has appealed.
It appears that stringers were laid on the soft ground where the steam digger was being operated; that these stringers measured 12 by 12, and were some 20 feet in length; that where the stringers join, or nearly join, other stringers, of the same dimension, but shorter in length, were placed; that upon these stringers rollers were placed, upon which the digger was moved as the work progressed. It was part of the duty of plaintiff to place and keep some of these rollers in position; as the machine moved forward, a fellow workman, in the rear, took the disengaged roller, and passed it to plaintiff, who put it into position in front, and held it there until the underbraces, attached to the machine, touched the roller and rolled on.
It was also the duty of plaintiff, before placing the steam digger in position for work, to clear the ground of stumps, and to level same. He failed to perform this duty, apparently, if his testimony be true, to the effect that the framework was not level, owing to the presence of a stump under one end of said framework.
Plaintiff failed to sustain his allegation as to the unevenness of the framework upon which the steam digger rested, and that such unevenness was the cause of the rollers becoming crooked, which resulted in injury to his hand. Plaintiff alleges that he communicated to the engineer in charge of the digger that the framework was uneven. But plaintiff’s testimony on this point is not corroborated by any witness; and it is denied by the defendant and his engineer. His testimony on this point is not clear or conclusive. He said, in answer to the question:
“Q. Why was not the framework level? A. They had a stump on the underside of the cribbing. Q. When did they find out that the stump was there? A. They knew the stump was there; I worked there, right level, right on the ground. Q. Did the engineer know the stump was there? A. Yes, sir; he knew the stump was there. Q. When the machine came on, you say it was not level? A. No, sir; it was balancing on my side. Q. It was all on your side? A. Yes, sir; it was balancing on my side; more to my side. Q. When you discovered that it was balancing on your side, what did you do? A. I called the attention of the engineer that the'machine was moving up. Q. How? A. I raised my hand and held out the rollers; but, instead of paying attention to me, he was looking at Mr. Reynolds. Q. 1-Iow were you holding your roller to put it, so that the machine would go up on it? A. I had to hold my hand in front of the rollers, and when they would go to shove the machine, it would catch it; the roller was getting away from me, from the framework, was getting away from the machine, and the machine was balancing on to one side, and then I just called attention, and he did not stop, and then I hollered again, and when I hollered again the roller gave way, and she jumped on my hand, just the end of my finger, and at that time she stopped.”
On cross-examination, plaintiff testified, with reference to the alleged unevenness of the framework, that it was due to another cause. He says:
*105 “The framework of the cribbing had given way; it was a joint, and it tripped up the end of the joint; and the joint had given way.”
The testimony of all the witnesses on the point shows that the machine was not going over the stringers, where they joined, at the time of the accident.
If the framework was in the uneven condition testified to by plaintiff, it was clearly his duty to have notified the engineer in charge, who was only a few feet from him, of the condition of the framework, so as to prevent the probable falling of said framework upon him and his fellow workmen; and his attempt to excuse himself for not doing so, by saying that the engineer was looking at the defendant, is not sufficient to excuse his own neglect. But his testimony is contradicted; and it is shown that there was no stump in the way, that the framework was not uneven, and that he did not attempt to notify the engineer in charge of such condition of affairs, to the knowledge of any witness who testified on the trial.
The conclusion is irresistible that, if the rollers were not straight under the machine, the plaintiff was responsible therefor, for it was his business to place the rollers in proper position.
It is equally clear that plaintiff is at fault for the injury to the three fingers of his right hand. If, after placing the offending roller in position, and holding it properly until the framework under the digger had -come into contact with the top of the roller, he, with care, would have had ample time to have removed his hand therefrom, as he had regularly done theretofore for some two or three months, while working at that place for the defendant. He contends that the rollers were too short for him to have handled them at their ends, and that he was required to place his hand on the side of the rollers, and therefore under the machine, until the machine came into contact with the roller. There is some uncertainty as to the length of the rollers; but they were seven inches in diameter, and there was sufficient;-.surface space for them to have been held in position safely by the hand of plaintiff, until the roller was caught and held in position by the brace under the machine. He had worked with these same rollers for two or three months, together with his fellow workmen, and this was the first serious accident that had occurred to any one of them. The rollers appeared to have been safe appliances, regardless of their length. And the work was not extra dangerous.
Plaintiff also claims damages for the injury done to the thumb of his right hand, which he says was wantonly crushed by the action of the engineer, acting under the instructions of the defendant. The evidence shows that, after the three fingers of plaintiff were caught under the roller, he cried out, and that the engineer stopped the machinery, which permitted the roller to rest on the end of plaintiff’s three fingers; that, the engineer ran forward, and, seeing the position of plaintiff and the conditions surrounding, drove the machine a short distance forward, thus crushing and lacerating the thumb of the plaintiff, and releasing the fingers and afterwards the thumb of plaintiff. It would further appear from the evidence that this action on the part of the engineer was the most humane and the wisest thing to have been done in'the premises. Plaintiff claims that defendant, or his agents, should have brought jackerews and raised the machinery; but this would have taken some little time, and plaintiff’s fingers would have been held under this weight of many tons during that time. Plaintiff’s suffering would have been prolonged and increased by doing that. And there is some question as to where the jackscrews could have found sufficient foundation, in the soft mud surrounding the machine, to be operated. The ma *107 chinery could not have been backed; and the court accepts the testimony for the defendant, that it had to be moved forward to release plaintiff from his painful position. Defendant was clearly without fault in causing the injury to the plaintiff’s thumb while extricating his hand from the perilous position in which his own carelessness had placed it.
The trial judge, who saw and heard the witnesses, after a careful analysis of 'the testimony, found, in a written opinion in the record, that the weight of the evidence was against plaintiff; and his judgment is fully concurred in.
Judgment affirmed.